IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY BAKER

        Plaintiff

v.

CITY OF CHICAGO ET AL

        Defendant

Case No. 22-cv-06995

Judge: Joan Humphrey Lefkow

**DEFENDANT MATTHEW CADMAN'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S COMPLAINT**

Defendant Matthew Cadman ("Defendant"), by his undersigned attorneys, answers Plaintiff's Complaint as follows:

1. Since January 2016, the Circuit Court of Cook County, Illinois has overturned more than 200 wrongful convictions based on the staggering corruption of Sergeant Ronald Watts and his corrupt team of Chicago police officers.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

2. Anthony Baker was convicted of a crime he did not commit, and his is one of the most recent of the Watts team's wrongful convictions to be overturned.

**ANSWER: Defendant admits that Plaintiff was convicted. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

3. The crime for which Mr. Baker was framed never happened; it was completely fabricated by corrupt Chicago police officers.

**ANSWER: Defendant denies he engaged in misconduct described in this**

1

paragraph. **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

4. Mr. Baker was arrested on June 24, 2003.

**ANSWER: Defendant admits 4. Mr. Baker was arrested on June 24, 2003. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

5. Mr. Baker's arrest occurred at the Ida B. Wells housing complex, a location that was heavily policed by corrupt Chicago police officers.

**ANSWER: Defendant admits Plaintiff's arrest occurred at the Ida B. Wells housing complex. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

6. The corrupt officers sought bribes, planted drugs, and falsely accused many people, including Mr. Baker, of possessing drugs.

**ANSWER: Defendant denies he engaged in or participated in the misconduct described in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

7. The type of encounter these police officers had with Mr. Baker was unfortunately quite common, and the consequences were dire: false arrests, criminal proceedings, incarcerations, and a subsequent felony record.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

8. Believing that he faced no chance of winning at trial after his June 24, 2003 arrest, Mr. Baker eventually pled guilty to the false charge.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

9. After Mr. Baker had completed his sentence, Defendants Watts and Mohammed were caught on tape engaging in the exact type of misconduct that Mr. Baker has alleged.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

10. The federal government charged Watts and Mohammed criminally, and the disgraced officers pled guilty and served time in federal prison.

**ANSWER: Defendant admits that in 2012 Watts and Mohammed were criminally charged by the federal government. Defendant, on information and belief, admits that Watts and Mohammed pled guilty to a single count of theft of government funds while they were off-duty and served time in prison. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

11. Since then, evidence has come to light showing that Defendant Watts and his crew engaged in a pattern of criminal misconduct against public housing residents and visitors and that Chicago Police Department officials have long known about that pattern.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

12. The scope of this misconduct cannot be overstated.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

13. For example, the Chief Justice of Illinois' Court of Claims has written that "many

individuals were wrongfully convicted," explaining that "Watts and his team of police officers ran what can only be described as a criminal enterprise right out of the movie 'Training Day.'"

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

14. The Court of Claims Chief Justice explained that "[o]n many occasions when these residents [of public housing] refused to pay the extortive demands the Watts crew would fabricate drug charges against them."

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

15. The Illinois Appellate Court, too, has weighed in on the scope of the scandal, repeatedly calling Watts and his team "corrupt police officers" and "criminals" and chastising the City's police disciplinary oversight body for doing "nothing to slow down the criminals" and their rampant misconduct and perjury.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

16. On or around November 16, 2017, the Cook County State's Attorney Office ("CCSAO") successfully moved to vacate the convictions of fifteen (15) individuals framed by the Watts outfit.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

17. In light of that decision by the CCSAO and recognizing the scope of misconduct that the City had allowed to flourish more than a decade unabated, fifteen (15) members of the Watts crew were placed on desk duty.

4

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

18. Since then, previously convicted petitioners and the CCSAO have successfully moved to vacate many more convictions.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

19. In recognition of the scope of their misconduct, the CSSAO will no longer call many of Watts's team – including at least some Defendants in this case – as witnesses "due to concerns about [their] credibility and alleged involvement in the misconduct of Sergeant Watts."

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

20. Through this lawsuit, Mr. Baker seeks accountability and compensation for the damage caused by Defendants' misconduct.

**ANSWER: Defendant admits plaintiff's complaint alleges misconduct by Defendants and seeks an award of damages. Defendant denies he engaged in the misconduct alleged by Mr. Roberts in this lawsuit. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

Jurisdiction and Venue

21. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Constitution of the United States.

**ANSWER: Defendant admits this action includes claims that purport to be based on 42 U.S.C. § 1983. Defendant lacks sufficient knowledge or information upon which to**

**form a belief as to the truth of the remaining allegations contained in this paragraph.**

22. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER: Defendant admits this Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States and has supplemental jurisdiction over state law claims pursuant and subject to 28 U.S.C. § 1367. Defendant admits venue is proper in the United Stated District Court, Northern District of Illinois and that Defendant City of Chicago is a municipal corporation. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

23. Mr. Baker is 38 years old. He currently resides in Chicago, Illinois.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

24. At all times relevant to this complaint, Defendants former Chicago Police Sergeant Ronald Watts, former Chicago Police Officer Kallatt Mohammed, Officer Robert Gonzales, Officer Michael Spaargaren, Officer Brian Bolton, Officer Matthew Cadman, Officer Darryl Edwards, Officer Gerome Summers Jr., and Officer Calvin Ridgell Jr. were police officers employed by the City of Chicago and acting within the scope of their employment and under the color of law. Collectively, these individual Defendants are referred to as Defendant Officers.

**ANSWER: Defendant admits Ronald Watts, former Chicago Police Officer Kallatt Mohammed, Officer Robert Gonzales, Officer Michael Spaargaren, Officer Brian Bolton, Officer Matthew Cadman, Officer Darryl Edwards, Officer Gerome Summers Jr., and Officer Calvin Ridgell Jr. are present or former police officers employed by the City of Chicago. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

25. At all relevant times, Defendant Watts was a leader of the Second District Tactical Team that worked the Ida B. Wells housing complex.

**ANSWER: admits Defendant Watts was a Chicago police officer and the Ida B. Wells housing complex was located within the boundaries of the Second District. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

26. Defendants Mohammed, Gonzales, Spaargaren, Bolton, Cadman, Edwards, Summers, and Ridgell worked on Watts's tactical team.

**ANSWER: Defendant admits Defendants Mohammed, Gonzales, Spaargaren, Bolton, Cadman, Edwards, Summers, and Ridgell worked on a tactical team of the Chicago Police Department. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

27. At all relevant times, Defendant Philip Cline was the Superintendent of the Chicago Police Department. Defendant Cline is referred to as Defendant Supervisory Officer.

**ANSWER: Defendant admits Defendant Phillip Cline was a Superintendent of the Chicago Police Department. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this**

7

**paragraph.**

28.     Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department ("CPD") and is responsible for the policies, practices, and customs of the City and the CPD.

**ANSWER:     Defendant admits the City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Factual Background

29.     During the 2000s, the Ida B. Wells complex was actively patrolled by a tactical team of CPD officers, led by Defendant Watts.

**ANSWER:     Defendant admits a tactical team of CPD officers patrolled the Ida B Wells housing complex. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

30.     Watts and his tactical team members were well known to the residents of Ida B. Wells and the surrounding area.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

31.     Watts and his tactical team members maintained a visible presence in the Ida B. Wells area. The Watts team had a reputation in the community for harassing, intimidating, and fabricating criminal charges against the area's residents and visitors.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

8

32. The Watts team's pattern of harassment continued with Mr. Baker.

**ANSWER: Defendant denies he harassed Plaintiff. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

33. Prior to his false arrest on June 24, 2003, Defendant Watts had stopped Mr. Baker and stolen money from him. Watts also threatened to arrest Mr. Baker.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

<u>**Mr. Baker Is Framed on June 24, 2003**</u>

34. On June 24, 2003, Mr. Baker was visiting friends at 574 E. Browning Avenue in the Ida B. Wells housing complex.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

35. While Mr. Baker was in an apartment on the 5th floor of the 574 Building, Defendant Watts and other officers entered into the apartment.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

36. Mr. Baker did not have any drugs or illegal contraband in his possession.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

37. Officers searched Mr. Baker but did not find any drugs or illegal contraband on him.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to**

9

form a belief as to the truth of the allegations contained in this paragraph.

38.     Mr. Baker was nonetheless handcuffed.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

39.     Defendant Watts announced that he found heroin behind the refrigerator in the kitchen.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

40.     Defendant Watts instructed some of the officers to take some of the people in the apartment downstairs.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

41.     Mr. Baker and Christopher Turner were left behind in the apartment and questioned by Defendant Watts.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

42.     Defendant Watts asked Mr. Baker and Mr. Turner for information regarding ownership of the drugs.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

43.     Mr. Baker told Defendant Watts that he had no information to give and that the drugs were not his.

**ANSWER:     Defendant lacks sufficient knowledge or information upon which to**

10

**form a belief as to the truth of the allegations contained in this paragraph.**

44. Defendant Watts repeatedly asked about ownership of the drugs. Mr. Baker continued to deny knowledge of the owner of the drugs. Defendant Watts responded by hitting Mr. Baker with a broomstick.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

45. Defendant Watts told Mr. Baker and Mr. Turner that the drugs were theirs.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

46. Mr. Baker was arrested and transported to the station.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

47. Mr. Baker was charged with possessing heroin.

**ANSWER: Defendant admits that Plaintiff was charged with possessing heroin.**

**<u>Mr. Baker is Prosecuted, Convicted, and Sentenced for the 2003 Arrest</u>**

48. The Defendant Officers prepared false and fabricated police reports related to this arrest.

**ANSWER: Defendant denies he prepared false and fabricated police reports related to this arrest. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

49. On the basis of these false reports, Mr. Baker was prosecuted for a drug crime.

**ANSWER: Defendant denies he prepared false and fabricated police reports related to this arrest. Defendant lacks sufficient knowledge or information upon which to**

11

**form a belief as to the truth of the remaining allegations contained in this paragraph.**

50. Even though Mr. Baker was innocent of the charge, knowing that he risked significantly more time in prison if he went to trial and lost, Mr. Baker accepted a plea deal.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

51. Mr. Baker was sentenced to twelve months on probation.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

52. Defendant Officers never disclosed to prosecutors that they had fabricated evidence and falsified police reports related to Mr. Baker's arrest.

**ANSWER: Defendant denies he fabricated evidence and falsified a police report related to Plaintiff's arrest. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

53. Defendant Officers never disclosed to the prosecutors any of their misconduct described herein. If the prosecutors had known that Defendant Officers fabricated evidence and committed the other misconduct described herein, they would not have pursued the prosecution of Mr. Baker.

**ANSWER: Defendant denies he engaged in the misconduct described herein. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Defendant Watts and His Team Engaged in a Pattern of Misconduct for at Least a Decade, All Facilitated by the City's Code of Silence

54. It was no secret within the CPD that Watts and his crew engaged in the type of

misconduct described herein.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

55. Government officials, including City of Chicago employees, knew about Watts's and his crew's alleged misconduct as early as 1999.

**ANSWER: Defendant denies he engaged in the misconduct described herein. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

56. Shortly thereafter, an FBI investigation of Watts and his crew was underway. The FBI investigation took place with the knowledge and occasional participation of the Chicago Police Department's Internal Affairs Division ("IAD").

**ANSWER: Defendant admits the FBI investigated Watts. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

57. Because IAD was kept abreast of the FBI investigation, during the times complained of, City officials—including but not limited to the head of IAD and the CPD superintendents—were aware of credible allegations that Watts and his team were extorting and soliciting bribes from drug dealers.

**ANSWER: Defendant denies extorting and soliciting bribes from drug dealers. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

58. Watts used a drug dealer named "Big Shorty" to run drugs at the Ida B. Wells complex. Big Shorty would sell the drugs, turning profits over to Watts in exchange for Watts's

13

protection. Watts used drug dealers as phony informants to conduct illegal searches. Watts also offered to release arrestees if they provided him with weapons, drugs, or money.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

59. Targets of the FBI investigation extended beyond Watts to members of Watts's tactical team, including some of the Defendant Officers named herein.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

60. During the times complained of, the FBI investigation generated evidence showing that Watts engaged in systematic extortion, theft, the possession and distribution of drugs for money, planting drugs on subjects, and paying informants with drugs.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

61. Investigators also determined that Watts and his subordinates had engaged in these activities for years.

**ANSWER: Defendant denies he engaged in extortion, theft, the possession, and distribution of drugs for money, planting drugs on subjects, and paying informants with drugs. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

## Watts and Mohammed are Charged with Federal Crimes

62. In 2012, after at least a decade of engaging in criminal misconduct, Defendants Watts and Mohammed were caught red-handed, shaking down a person they thought was a drug courier but who was actually an agent for the FBI.

14

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

63. The U.S. government subsequently charged Watts and Mohammed with federal crimes.

**ANSWER:** **Defendant admits the United States government charged Watts and Mohammed with crimes. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

64. Watts and Mohammed both pled guilty to federal criminal charges and were sentenced to terms of imprisonment. See *United States v. Watts*, No. 12- CR-87-1 (N.D. Ill.); *United States v. Mohammed*, No. 12-CR-87-2 (N.D. Ill.).

**ANSWER:** **Defendant admits Watts and Mohammed pled guilty to a crime. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

65. In its sentencing memorandum in the criminal case against Watts, the government explained that "[f]or years☐ the defendant [Watts] used his badge and his position as a sergeant with the Chicago Police Department to shield his own criminal activity from law enforcement scrutiny." Watts's crimes included "stealing drug money and extorting protection payments" from the individuals he was sworn to protect and serve.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

66. The government revealed that, for years, Defendants Watts and Mohammed extorted tens of thousands of dollars in bribes from individuals at the Ida B. Wells public housing complex on numerous occasions as part of their duties with the CPD.

15

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

67. During the sentencing hearing, the government urged Judge Sharon Johnson Coleman to "consider the other criminal conduct that the defendant [Watts] engaged in throughout the course of his career as a police officer," specifically noting that during the federal investigation, Watts "did other things such as putting a false case on the confidential source that was involved in our investigation. Watts had him arrested on drug charges. And the source . . . felt he had no chance of successfully fighting that case, so he pled guilty to a crime he didn't commit." The federal prosecutor wondered aloud "how many times [Watts] might have done something similar when the government was not involved."

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

68. Following the federal indictments of Watts and Mohammed, City officials made efforts to downplay the magnitude of Watts's criminal enterprise.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

69. Notwithstanding the evidence investigators had amassed over the years pointing to a wide, decade-long criminal enterprise, CPD Superintendent Garry McCarthy publicly stated, "There is nobody involved other than the two officers who were arrested." As described in more detail below, McCarthy was wrong.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

### The City's "Code of Silence"

70. While the federal government was investigating Watts and his crew, a "code of silence" existed within the CPD.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

71. Under this code, police officers are expected to conceal each other's misconduct, in contravention of their sworn duties, and the penalties for breaking the code of silence within the CPD are severe.

**ANSWER: Defendant denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

72. As one CPD officer has explained, "[The Chicago Police Academy told officers] over and over again we do not break the code of silence. Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER: Defendant denies he was ever instructed as alleged in this paragraph and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

73. Pursuant to this "code of silence," each of the Defendant Officers concealed from

17

Mr. Baker information that Watts and his crew members were in fact engaged in a wide-ranging pattern of misconduct. Had this information been disclosed to Mr. Baker he would have used it to impeach the officers' accounts, which would have changed the outcome of the criminal proceedings instituted against him.

**ANSWER:** **Defendant denies he concealed from Plaintiff information that Watts and his team members were in fact engaged in a wide-ranging pattern of misconduct. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

74. Also, consistent with this "code of silence," the few people who stood up to Watts and his crew and/or attempted to report his misconduct were either ignored or punished, while Watts and his crew continued to engage in misconduct with impunity.

**ANSWER:** **Defendant denies he engaged in misconduct and denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant denies he engaged in misconduct. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

## The Careers of CPD Officers Daniel Echeverria and Shannon Spalding are Nearly Ruined

75. In or around 2006, two Chicago police officers, Daniel Echeverria and Shannon Spalding, learned credible information from arrestees that Watts and his crew were engaged in illegal drug activity.

**ANSWER:** **Defendant denies he engaged in illegal drug activity. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the**

18

**remaining allegations contained in this paragraph.**

76. Officer Echeverria took the allegations seriously and reported them to a CPD supervisor. The supervisor made clear that he was not interested in hearing about the allegations, and he directed Echeverria not to document the allegations.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

77. Echeverria and Spalding subsequently reported the allegations about Watts and his crew to the FBI. Soon thereafter, Echeverria and Spalding began cooperating with the FBI and actively assisting the FBI with its investigation of Watts and his crew.

**ANSWER: Defendant admits Spaulding had assisted the FBI in an investigation involving Sargent Watts. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

78. When their cooperation became known to officers within their CPD chain of command, Spalding and Echeverria were labeled "rats" within the Department, their lives were threatened, and they endured all manner of professional retaliation by members of the CPD.

**ANSWER: Defendant denies he labeled Spaulding and Echeverria as rats, threatened their lives, or retaliated against them. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

79. Spalding and Echeverria subsequently sued the City for the retaliation they suffered for blowing the whistle on Watts and his crew. On the eve of trial in that case, the City settled for $2 million.

**ANSWER: Defendant admits Spaulding and Echeverria sued the City of Chicago.**

19

**Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### CPD Officer Michael Spaargaren's Life is Threatened

80. Sometime in the mid-2000s, CPD Officer Michael Spaargaren was assigned to work with Watts in public housing.

**ANSWER: Defendant admits Michael Spaargaren and Sargent Watts worked together on the same tactical team. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

81. Spaargaren observed that Watts did not inventory drugs and money that officers seized during arrests, and Spaargaren confronted Watts about the misconduct.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

82. In response, Watts threatened to fabricate allegations of misconduct against Spaargaren and made veiled threats to kill him.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

83. A CPD lieutenant in the chain of command—James Spratte—subsequently warned Spaargaren to keep his mouth shut or his life would be in danger.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

84. Fearful for his life, Spaargaren opted to take a one-and-a-half-year leave of absence from CPD rather than continue to work under Watts.

20

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

### Citizen Complaints Went Nowhere

85. Defendants Watts, Mohammed, and other members of Watts's tactical team accumulated hundreds of citizen complaints concerning violations of citizens' civil rights over the years. These complaints began well before the misconduct Defendants committed against Mr. Baker. Despite the shocking number of citizen complaints directed against Watts and his team, the City did nothing to stop the misconduct.

**ANSWER:** Defendant admits he was the subject of citizen complaints during the course of his career as a police officer. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.

86. As for the complaints that the City bothered to investigate, the City often failed to seek out known witnesses and corroborating evidence and even ignored corroborating evidence— instead, the City would side with officers' boilerplate denials over complainants and their witnesses, no matter how many citizens came forward with the same type of complaint.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

87. The Illinois Appellate Court criticized the City for its utter failure to address the misconduct of Watts and his team.

**ANSWER:** Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.

88. In multiple instances, the City actually assigned Watts to investigate complaints

21

made against him or members of the team he supervised.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

### The City Turns a Blind Eye to the Clear Pattern of Alleged Misconduct that Emerged from Watts and His Crew

89. Despite all the evidence that was amassed over the years of a pattern and practice of criminal misconduct by Defendant Officers, the City never conducted its own investigation of the clear pattern that emerged.

**ANSWER: Defendant denies he engaged in the misconduct alleged in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

90. As City officials were aware, the purpose of the FBI investigation was to investigate and prosecute criminal activity, not to impose discipline and control of the CPD.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

91. Nothing about the FBI investigation relieved the City of its fundamental responsibility to supervise, discipline, and control its officers.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

92. Nevertheless, the City completely abdicated this responsibility, allowing the widespread misconduct to continue undeterred throughout the FBI's criminal investigation of Watts and his crew.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

22

93. During the FBI investigation, which spanned at least eight years, City officials had reason to believe that Watts and his crew continued engaging in criminal activity on the streets— extorting drug dealers and framing citizens for crimes they did not commit—yet City officials took no steps to prevent these abuses from occurring.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

94. Instead, City officials let officers on Watts's crew continue to pursue criminal charges against citizens like Mr. Baker and continue to fabricate false police reports and testify falsely against citizens like Mr. Baker.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

95. City officials withheld information they had about the officers' pattern of transgressions—information that citizens like Mr. Baker could have used to impeach the corrupt officers and defend against the bogus criminal charges brought against them.

**ANSWER: Defendant denies any allegations directed against him in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph..**

## Exonerations

96. After the extensive scope of Defendant Watts and his crew's corruption came to light, on September 12, 2017, a group of similarly situated innocent victims filed a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 ("Consolidated Petition").

**ANSWER: Defendant lacks sufficient knowledge or information upon which to**

23

form a belief as to the truth of the allegations contained in this paragraph.

97. On November 16, 2017, upon the State's motion, Judge LeRoy K. Martin, Jr. vacated and nolle prossed all of the convictions related to the fifteen (15) Petitioners named in the Consolidated Petition.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

98. In commenting on the extraordinary decision to agree to vacate all the convictions tied to Watts and his team, the head of CCSAO's Conviction Integrity Unit, Mark Rotert, stated that, "In these cases, we concluded, unfortunately, that police were not being truthful and we couldn't have confidence in the integrity of their reports and their testimony."

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

99. On September 24, 2018, eighteen (18) other similarly situated innocent victims were given a semblance of justice. Upon the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions, and the State nolle prossed all charges related to the convictions stemming from Watts and his team's wrongful arrests.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

100. Following this decision, Mr. Rotert explained that "these arrests were purely conjured . . . . [Watts and his team] were basically arresting people and framing them or were claiming they were involved in drug offenses that either didn't occur or didn't occur the way these police officers said."

**ANSWER: Defendant lacks sufficient knowledge or information upon which to**

24

form a belief as to the truth of the allegations contained in this paragraph.

101.    At a press conference where she stood side-by-side with many of the exonerated, Cook County State's Attorney-Elect Kimberly Foxx stated that "[t]he system owes an apology to the men who stand behind us."

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

102.    On November 2, 2018, seven (7) more victims had eight (8) additional convictions voluntarily dismissed by the CCSAO.

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

103.    In a press release, CCSA Foxx stated that the "pattern of misconduct" by Watts and his team caused her "to lose confidence in the initial arrests and the validity of these convictions."

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

104.    Referring to the exonerees as "victims," Ms. Foxx wished them "a path forward in healing and justice."

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

105.    The CCSAO has since voluntarily dismissed additional convictions.

**ANSWER:    Defendant admits the CCSAO voluntarily dismissed additional convictions after November 2, 2018. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this**

**paragraph.**

106. On February 24, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "I think it's important that we acknowledge the harm that was caused when we talk about these cases. It's not just these men. It's the erosion of the trust in the justice system when we allow for those [men] to be wrongfully convicted based on the misdeeds of corrupt law enforcement."

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

107. On December 15, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "The seeds of distrust for our criminal justice system run deeply in communities most impacted by violence because of people in power like Sergeant Watts and his cronies who targeted and criminally preyed on these communities, leaving these neighborhoods feeling like their voice didn't matter." Regarding the exonerations, Ms. Foxx went on to state that it is "always the right time to do the right thing" and "never too late to deliver justice" to the Watts- related victims.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

108. On February 19, 2021, after yet another mass dismissal, Ms. Foxx stated: "Vacating the convictions of these nine people today who were targeted by former Police Sergeant Watts provides just a fraction of relief for those who spent time in prison, away from their families, as we will never be able to give them that time back."

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

26

109.   In a press release on November 4, 2021—when five (5) more convictions were dismissed—Ms. Foxx stated: "As prosecutors, we know that harm was caused …Today is a step towards righting the wrongs of the past and giving these individuals their names back."

**ANSWER:   Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

110.   On February 1, 2022, during a hearing that resulted in twenty (20) more dismissals of Watts-related convictions, the Presiding Judge of the Cook County Criminal Courts, Erica L. Reddick, called the Watts era "a blight on the criminal justice system."

**ANSWER:   Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

111.   The CCSAO will no longer call certain members of Watts's crew, including at least some of the Defendant Officers named herein, as witnesses in any pending or future matters due to concerns about their credibility and alleged involvement in misconduct.

**ANSWER:   Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

112.   In November 2017, former Superintendent of the Chicago Police Department Eddie T. Johnson placed multiple members of Watts's crew on desk duty.

**ANSWER:   Defendant admits that some police officers who worked under Sargent Watts had been placed on desk duty. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

113.   Mr. Baker received a certificate of innocence stemming from his arrest and conviction certifying that Mr. Baker was, in fact, innocent of the crime of which he was

convicted and for which he should never have been arrested in the first place.

**ANSWER: Defendant admits Plaintiff received a certificate of innocence. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Mr. Baker's Damages

114.    Because of the Defendants' acts and omissions, Mr. Baker was subjected to police harassment and unfair criminal proceedings.

**ANSWER: Defendant denies he harassed Plaintiff and or subjected Plaintiff to unfair criminal proceedings. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

115.    The Defendant Officers' misconduct and false accusations subjected Mr. Baker to a felony conviction and wrongful incarceration before he was exonerated.

**ANSWER: Defendant denies engaging in misconduct and false accusations described herein. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

116.    The pain and suffering caused by being wrongfully incarcerated has been significant. During his incarceration, Mr. Baker was deprived of the everyday pleasures of basic human life, and his freedom was taken from him. Since then, Mr. Baker has had to live with a felony record he did not deserve.

**ANSWER: Defendant denies he caused Mr. Roberts to be wrongfully incarcerated. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

28

117. As a result of the foregoing, Mr. Baker suffered damages proximately caused by Defendants' wrongdoing.

**ANSWER: Defendant denies engaging in misconduct described herein. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count I: 42 U.S.C. § 1983 – Due Process

118. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

119. In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of his constitutional right to due process and a fair trial.

**ANSWER: Defendant denies that he individually, jointly, and in conspiracy with other the other Defendants, deprived Plaintiff of his constitutional right to due process and a fair trial.**

120. In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER: Defendant denies he withheld exculpatory evidence from Plaintiff, state prosecutors, and others, denies he fabricated false evidence, and denies he mislead and misdirected the criminal prosecution of Plaintiff, and denies he engaged in a conspiracy with the other Defendant Officers. Defendant lacks sufficient knowledge or**

29

**information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

121. Likewise, in the manner described more fully above, Defendant Philip Cline, and other as-yet-unidentified CPD supervisors, had knowledge of a pattern of misconduct by Watts and his team. These Defendant Supervisory Officer knew of a substantial risk that Watts and his team would violate the rights of Mr. Baker and other residents and visitors of the Ida B. Wells complex, and they deliberately chose a course of action that allowed those abuses to continue, thereby condoning those abuses.

**ANSWER: Defendant denies he engaged in the misconduct referenced in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

122. The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendant Supervisory Officer or were proximately caused when Defendant Supervisory Officer were deliberately or recklessly indifferent to their subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

123. In addition, Defendant Supervisory Officer themselves concealed exculpatory evidence from Mr. Baker, specifically information about Watts and his team's pattern of misconduct. In this way, Defendant Supervisory Officer violated Mr. Baker's due process right to a fair trial deliberately and with reckless disregard for Mr. Baker's rights.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to**

30

**form a belief as to the truth of the allegations contained in this paragraph.**

124. Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, denying him of his constitutional right to due process and a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER: Defendant denies he engaged in the misconduct alleged in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

125. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Mr. Baker's clear innocence.

**ANSWER: Defendant denies he engaged in the misconduct alleged in this count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

126. Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Defendant denies he engaged in the actions alleged in this count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

127. The City of Chicago is also directly liable for the injuries described in this Count because the City and CPD maintained official policies and customs that were the moving force behind the violation of Plaintiff's rights, and also because the actions of the final policymaking officials for Defendant City of Chicago and CPD were the moving force behind the violation of

31

Plaintiff's rights.

**ANSWER: Defendant denies he engaged in the misconduct alleged in this count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

128. At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago maintained a system that violated the due process rights of criminal defendants like Mr. Baker by concealing exculpatory evidence of Chicago police officers' patterns of misconduct.

**ANSWER: Defendant denies he engaged in the misconduct referenced in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

129. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by its officers and agents under which criminal suspects, such as Mr. Baker, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

**ANSWER: Defendant denies he engaged in the misconduct referenced in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

130. As a matter of both policy and practice, Defendant City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to

32

adequately train, supervise, control, and discipline its police officers, such that its failure to do so manifests deliberate indifference. Defendant City's practices lead police officers in the City of Chicago to believe that their actions will never be scrutinized and, in that way, directly encourage further abuses such as those that Mr. Baker endured.

**ANSWER: Defendant denies Defendant City had a policy and practice that directly encouraged him to engage in misconduct or that he engaged in the misconduct referenced in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

131. The above-described widespread practices, which were so well settled as to constitute the de facto policy of the City of Chicago, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. These widespread practices were allowed to flourish because Defendant City and the CPD declined to implement sufficient policies or training, even though the need for such policies and training was obvious. Defendant City and the CPD also declined to implement any legitimate mechanism for oversight or punishment of officers, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER: Defendant denies he engaged in the misconduct alleged in this count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

132. Furthermore, the misconduct described in this Complaint was undertaken pursuant to the policy and practices of Defendant City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with

final policymaking authority for the City of Chicago and the CPD, or were actually committed by persons with such final policymaking authority.

**ANSWER: Defendant denies he the engaged in misconduct described in this Complaint or violated Plaintiff's constitutional rights. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

133. Indeed, municipal policymakers have long been aware of Defendant City's policy and practice of failing to properly train, monitor, investigate, and discipline misconduct by its police officers, but have failed to take action to remedy the problem.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

134. For example, at a City Council hearing on September 28, 1999, in response to two high-profile unjustified police shootings, then-Superintendent Terry Hillard noted the need for better in-service training on the use of force, early detection of potential problem officers, and officer accountability for the use of force.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

135. In June 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

136. In 2001, the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed the findings of that resolution, concluding that the CPD lacked many of the basic tools necessary to identify, monitor, punish, and prevent police misconduct. The JCGC findings were presented to Mayor Richard Daley, Superintendent Hillard, and the Chicago Police Board.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

137. Despite municipal policymakers' knowledge of the City's failed policies and practices to adequately train, supervise, investigate, discipline, and control its police officers, nothing was done to remedy these problems.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

138. As a result, the CPD has continued to respond to complaints of police misconduct inadequately and with undue delay and has continued to recommend discipline in a disproportionately small number of cases.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

139. Indeed, by its own admissions, more than 99% of the time when a citizen complains that his or her civil rights were violated by police officers, the City sides with the police officer and concludes that no violation occurred.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

140. Before she was elected Mayor of the City of Chicago, then-Police Board Chair

Lori Lightfoot made clear that "[a]ny of those officers [on Watts team] who remain on the job must be quickly brought to justice through criminal prosecution and/or disciplinary action."

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

141. Yet, as of the filing of this complaint, the Lightfoot administration has not taken the type of action that Ms. Lightfoot demanded before she became mayor.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

142. Notably, Defendant Watts and his crew are not the first Chicago police officers who were allowed to abuse citizens with impunity over a period of years while the City turned a blind eye.

**ANSWER: Defendant denies he was allowed to abuse citizens. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

143. For instance, in 2001, Chicago Police Officer Joseph Miedzianowski was convicted on federal crime charges, including racketeering and drug conspiracy. The jury found that Miedzianowski engaged in corruption for much of his 22-year police career, using street informants to shake down drug dealers and sell drugs.

**ANSWER: Defendant admits Joseph Miedzianowski was convicted of a crime. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

144. Miedzianowski, like Defendant Officers in this case, had accumulated scores of complaints over the years. As the Appellate Court has stated, the Defendant City "did nothing to

36

slow down the criminals. Instead, it informed the corrupt officers about the complaint and named the source." The Defendant City deemed such complaints unfounded or not sustained.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

145. Likewise, in 2011, Chicago police officer Jerome Finnigan was convicted and sentenced on federal criminal charges, including a charge of attempting to hire someone to kill a police officer who Finnigan believed would be a witness against him on his own corruption charges in state court.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

146. Finnigan was part of a group of officers in Defendant City's Special Operations Section that carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

147. Finnigan and his crew engaged in their misconduct at about the same time that Mr. Baker was targeted by Defendant Watts and his crew.

**ANSWER: Defendant denies he targeted Plaintiff. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

148. Finnigan, like Defendant Officers in this case, had accumulated scores of citizen complaints over the years, which Defendant City routinely deemed unfounded or not sustained.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to**

37

**form a belief as to the truth of the allegations contained in this paragraph.**

149.    At his sentencing hearing in 2011, Finnigan stated, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

150.    In the case of *Klipfel v. Bentsen*, No. 94-cv-6415 (N.D. Ill), a federal jury found that, as of 1994, the CPD maintained a code of silence that facilitated misconduct committed by Miedzianowski.

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

151.    Likewise, in the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

152.    The same code of silence in place at the CPD during the time periods at issue in the Klipfel case and the Obrycka case was also in place during the times complained of herein.

**ANSWER:    Defendant denies he experienced, participated in, or observed a "code of silence," as he understands this phrase to mean. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

153.    Indeed, the problems found to exist by the jury in Klipfel and Obrycka continue to

this day. In December 2015, then-Mayor Rahm Emanuel acknowledged that a "code of silence" exists within the CPD that encourages cover-ups of police misconduct, and that the City's attempts to deal with police abuse and corruption have never been adequate.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

154. Even more recently, in January 2020, the CPD's then-interim head Charlie Beck also acknowledged the code of silence.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

155. The policies, practices, and customs set forth above were the moving force behind the constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous injuries and damages set forth above.

**ANSWER:** **Defendant denies he caused Plaintiff to suffer injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

156. Defendant City's investigation of complaints is characterized by unreasonably long delays, despite the relatively straightforward nature of many misconduct claims.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

157. Although Defendant City has long been aware that its supervision, training, and discipline of police officers is entirely inadequate, Defendant City has not enacted any substantive measures to address that deficiency.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to**

39

**form a belief as to the truth of the allegations contained in this paragraph.**

158.    Instead, Defendant City continues to inadequately investigate citizen complaints and fails to take action against officers when necessary. It has also failed to modify its officer training programs to reduce misconduct against Chicago residents or to implement a system to identify and track repeat offenders, districts, or units.

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

159.    Plaintiff's injuries were caused by CPD officers, agents, and employees of Defendant City of Chicago, including, but not limited to, the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER:    Defendant denies he caused Plaintiff to be injured or engaged in the misconduct described in this Count pursuant to the policies, practices, and customs set forth above. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count II: 42 U.S.C. § 1983 – Malicious Prosecution and Unlawful Pretrial Detention – Fourth and Fourteenth Amendment

160.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:    Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

161.    In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew

Plaintiff was innocent.

**ANSWER: Defendant denies he individually, jointly, and in conspiracy with others, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

162. In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

**ANSWER: Defendant denies he engaged in the acts and omissions alleged in this paragraph or caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

163. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

**ANSWER: Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

164. Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty.

**ANSWER: Defendant denies he deprived Plaintiff of fair state criminal proceedings or otherwise engaged in any misconduct indirectly referenced in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a**

**belief as to the truth of the remaining allegations contained in this paragraph.**

165.    In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent. This was accomplished through Defendants' fabrication and suppression of evidence.

**ANSWER:    Defendant denies he subjected Plaintiff to arbitrary governmental action, framed Plaintiff for a crime, fabricated and or suppressed evidence relating to Plaintiff, or otherwise engaged in any of the acts and omissions directly or indirectly alleged in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

166.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's clear innocence.

**ANSWER:    Defendant denies he engaged in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

167.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:    Defendant denies he engaged in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

168.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and

42

other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant denies he engaged in the misconduct described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

169.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER:** **Defendant denies he engaged in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count III: 42 U.S.C. § 1983 – Failure to Intervene

170.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** **Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

171.    In the manner described more fully above, during the constitutional violations described herein, Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:** **Defendant denies he engaged or participated in the constitutional violations described in this Count and denies he failed to intervene to prevent the alleged violation of Plaintiff's constitutional rights. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations**

43

**contained in this paragraph.**

172. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Defendant denies he engaged or participated in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

173. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Defendant denies he engaged in the actions described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

174. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendant denies he engaged in the actions described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

175. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants, who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER: Defendant denies he engaged in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count IV: 42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights

176. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

177. Prior to Plaintiff's conviction, all of the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described above.

**ANSWER: Defendant denies he engaged or participated in a conspiracy to frame Plaintiff for a crime he did not commit and deprive him of his constitutional rights. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

178. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of his rights.

**ANSWER: Defendant denies he engaged or participated in the conspiracy alleged in this paragraph and denies he made an agreement with anyone to protect one another from liability by depriving Plaintiff of his rights. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

179. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Defendant denies he engaged or participated in the conspiracy referenced in this paragraph and denies committing overt acts in connection with the conspiracy alleged in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

180. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Defendant denies he engaged or participated in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

181. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Defendant denies he engaged or participated in the actions described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

182. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Defendant denies he engaged or participated in the misconduct described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental**

**anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

183.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER:    Defendant denies he engaged in the acts and omissions alleged in this paragraph. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## Count V: Illinois Law – Malicious Prosecution

184.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:    Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

185.    In the manner described more fully above, Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

**ANSWER:    Defendant denies he engaged in the acts and omissions described in this Complaint, denies he accused Plaintiff of criminal activity, and denies he exerted influence to initiate, continue and perpetuate judicial proceedings against Plaintiff without any probable cause. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

186.    In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were

47

instituted and continued maliciously, resulting in injury.

**ANSWER:** **Defendant denies he instituted, continued, and caused Plaintiff to be subjected to judicial proceedings. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

187. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:** **Defendant denies he engaged in the actions described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

188. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant denies he engaged in the actions described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count VI: Illinois Law – Intentional Infliction of Emotional Distress

189. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** **Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

190. The actions, omissions, and conduct of Defendant Officers, as set forth above,

were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** **Defendant denies he engaged in the actions, omissions, and conduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

191. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER:** **Defendant denies he engaged in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

192. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant denies he engaged in the misconduct described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### Count VII: Illinois Law – Civil Conspiracy

193. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** **Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

49

194. As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

**ANSWER: Defendant denies he engaged or participated in the conspiracy alleged in this paragraph and denies making an agreement with the other Defendant Officers to protect one another from liability. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

195. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Defendant denies he engaged or participated in the conspiracy alleged in this count and denies committing overt acts in connection with the conspiracy alleged in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

196. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Defendant denies he engaged or participated in the misconduct described in this Count. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

197. As a result of Defendants' misconduct described in this Count, Plaintiff suffered

loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** **Defendant denies he engaged or participated in the misconduct described in this Count and denies he caused Plaintiff to suffer loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous injuries and damages. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

<u>Count VIII: Illinois Law – Respondeat Superior</u>

198.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** **Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

199.     While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER:** **Defendant denies he engaged in the acts alleged in the preceding paragraphs. Defendant admits Defendant Officers are former or present employees of the City of Chicago. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

200.     Defendant City of Chicago is liable as principal for all torts committed by their agents.

**ANSWER:** **Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

<u>Count IX: Illinois Law – Indemnification</u>

51

201.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:    Defendant restates his answers to each paragraph of this Complaint as if restated fully herein.**

202.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER:    Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in this paragraph.**

203.    Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER:    Defendant admits Defendant Officers are former or present employees of the City of Chicago. Defendant denies he engaged in the misconduct described herein. Defendant lacks sufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## AFFIRMATIVE DEFENSES

Defendant Matthew Cadman, without prejudice to his denials and other statements in his Answer to the Complaint, for his affirmative defenses to the Complaint, states:

1.    Defendant is entitled to qualified immunity because it was not clearly established that the alleged conduct violated Plaintiff's constitutional rights. At all relevant times, a reasonable officer objectively viewing the facts and circumstances then confronting Defendant Cadman, could have believes his actions regarding his encounter with Plaintiff to be lawful, in light of clearly established law and the information he possessed.

2.    Defendant cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless he

52

individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

3. Defendant is absolutely immune for any testimony he may have given in plaintiff's underlying criminal case. *See Briscoe v. LaHue*, 460 U.S. 325 (1983); *Jurgensen v. Haslinger*, 295 Ill. App. 3d 139, 141-42, 692 N.E.2d 347, 349-50 (3d Dist. 1998).

4. Defendant is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2- 202.

5. Under the Illinois Tort Immunity Act, Defendant is not liable under state law for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

6. Plaintiff's claims are barred by the applicable statutes of limitations.

7. Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel.

8. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, including by his criminal misconduct and/or voluntary guilty plea, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his damages.

9. Plaintiff's Complaint fails to state cognizable claims for relief that are plausible on their face.

   a. Plaintiff fails to state a fabricated evidence-based due process claim because the allegedly fabricated evidence was not introduced against him at trial and did not cause his conviction;

53

b.      Even if otherwise actionable, Plaintiff's guilty plea defeats his fabricated evidence based-due process claim;

c.      To the extent Plaintiff alleges a *Brady*-based due process claim, such claim fails because his allegations establish that no evidence subject to *Brady* was suppressed;

d.      To the extent Plaintiff asserts Fourteenth Amendment due process claim based on any pre-trial deprivation of liberty or attempts a federal malicious prosecution claim, those claims are not actionable as a matter of law;

e.      To the extent Plaintiff alleges a failure to intervene, such a claim has no basis in the Constitution, and the "Supreme Court has held many times that § 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J. concurring);

f.      Any derivative failure to intervene or conspiracy claims are not actionable; and

g.      Plaintiff's Fourth Amendment claim for detention without probable cause is time-barred.

## JURY DEMAND

Defendant, Matthew Cadman demands a trial by jury.

Respectfully Submitted:
DEFENDANT MATTHEW CADMAN

By: */s/ James V. Daffada*
Special Assistant Corporation Counsel
James V. Daffada
Thomas M. Leinenweber
Special Assistant Corporation Counsel
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
866-786-3705
jim@ilesq.com
thomas@ilesq.com

54